In the Matter of Ernest Lowell DINIUS.

No. 49S00–9602–DI–150.

Supreme Court of Indiana.

March 4, 1998.

Thomas L. Landwerlen, Indianapolis, for respondent.

Donald R. Lundberg, Executive Secretary, Seth T. Pruden, Staff Attorney, Indianapolis, for the Indiana Supreme Court Disciplinary Commission.

## DISCIPLINARY ACTION

PER CURIAM.

On May 10, 1996, a federal district court convicted the respondent, Ernest Lowell Dinius, of conspiracy to commit wire and bank fraud. This attorney disciplinary action arises from that conviction.

In addition to filing a *Verified Complaint for Disciplinary Action* on November 20, 1996, the Disciplinary Commission moved for a *pendente lite* suspension of the respondent on February 16, 1996, which this Court granted effective April 11, 1996. As a preliminary matter, we note that the respondent was admitted to the bar of this Court in 1970, and is therefore subject to our disciplinary jurisdiction. Pursuant to Ind. Admission and Discipline Rule 23, Section 11(c), the respondent and the Commission have reached an agreement in resolution of this matter. That agreement is now before this Court for final approval. We approve it, and herein recount the facts and circumstances of this case.

The parties agree that in 1994, the respondent was charged with four (4) counts of conspiracy to commit wire and bank fraud.

After trial in the United States District Court, District of New Jersey, the respondent, on May 10, 1995, was convicted of one count of conspiracy to commit wire and bank fraud in violation of 18 U.S.C. 371. He was acquitted of the other three counts. That day, the court sentenced the respondent to a term of imprisonment for a period of 10 months, followed by a three-year period of supervised release.

Relevant portions of the federal criminal indictment alleged the following events. In the late 1980s, the respondent, as senior vice president for the leasing division of a large lending institution (the "respondent's bank"), was responsible for its Indianapolis unit. During that period, several individuals conspired to defraud lending institutions by submitting false loan documents for the purchase and financing of high value boats and aircraft. Pursuant to the scheme, a conspirator would sell the high-value item to a co-conspirator at an inflated price. The conspirators would then obtain financing from a target lending institution for the inflated price. Often, the value of the items was inflated based on improvements described in the financing applications that were in fact bogus. The respondent became involved when the conspirators approached his bank with a $950,000 purchase order for a helicopter that had a true value of $675,000. The respondent made the loan based on the bogus documents. Several weeks later, the conspirators sought financing from the respondent's bank for a Boeing 727 jet aircraft which had a true value of $6.3 million but for which the conspirators sought financing in the amount of $8.85 million. The respondent again approved the loan. In May 1988, the respondent's bank participated in a third loan to the conspirators in the amount of $9.6 million for a Gulfstream IIB corporate jet with a value of $8.775 million. All three loans quickly went into default. In response to the respondent's attempts to collect the troubled loans, the conspirators attempted to buy time with various fabrications about how sale of the aircraft was imminent.

In late 1988, the respondent discovered that a guaranty signed by one of the conspirators might have been a forgery, leaving

serious doubt about the security for the loans. At about that same time, the conspirators began seeking refinancing with other lending institutions. To that end, negotiations were initiated with another large lending institution. The respondent assisted the conspirators in their effort to get the institution to take over the loans, but failed to provide full disclosure of their troubled nature. At that time, the FBI was investigating the activities of one of the conspirators, and, in late 1988, charges were filed against him. The respondent initially cooperated with authorities during the investigation. However, in the fifth amendment to the indictment, the respondent was added as a defendant based on his participation in furtherance of the conspiracy by "shopping" the troubled loans to the other lending institution and failing to disclose their underlying problems.

The Commission and the respondent submit that the respondent violated Ind.Professional Conduct Rule 8.4(b).[1] We now find that the respondent's criminal conviction for conspiracy to commit wire and bank fraud represents the commission of a criminal act that reflects adversely on his honesty, trustworthiness and fitness as a lawyer in violation of Prof.Cond.R. 8.4(b).

The respondent and the Commission agree that the respondent should be suspended from the practice of law for a period of not less than three years. They suggest that the period of suspension commence on the date of the respondent's *pendente lite* suspension. In assessing the adequacy of the agreed discipline, we note that the parties offer factors purported to mitigate the severity of the misconduct. Most significant among these is that the respondent was not initially a part of the over-financing conspiracy. Instead, his misconduct consisted of aiding in the refinancing of loans he knew to be faulty. Further, they assert that the respondent cooperated with the federal criminal investigation, cooperated fully with the Commission, and that he voluntarily reported his conviction to the Disciplinary Commission.

We view the respondent's misconduct as egregious. It reveals a willingness of an officer of the court to further a criminal conspiracy to commit a federal crime in an effort to eliminate potential financial loss to his employer, even at the expense of another financial institution. It is somewhat extenuating that his interest apparently did not lie in directly profiting from the conspirators' scheme, but rather in protecting his employer and himself after discovering the fraud. Unfortunately, he decided to attempt to extricate himself using illegal means. His actions threatened serious harm to the other bank. After careful consideration of these aspects of his misconduct, we conclude that a substantial period of suspension is warranted and therefore accept the agreed discipline of a three-year suspension.

It is, therefore, ordered that the respondent, Ernest Lowell Dinius, is suspended from the practice of law for a period of not less than three (3) years, beginning April 11, 1996. At the conclusion of that period, the respondent may petition this Court for reinstatement, provided he meets the requirements of Admis.Disc.R. 23(4).

The Clerk of this Court is directed to provide notice of this order in accordance with Admis.Disc.R. 23(3)(d) and to provide the clerk of the United States Court of Appeals for the Seventh Circuit, the clerk of each of the Federal District Courts in this state, and the clerk of the United States Bankruptcy Court in this state with the last known address of respondent as reflected in the records of the Clerk.

Costs of this proceeding are assessed against the respondent.

SHEPARD, C.J., and SULLIVAN, SELBY and BOEHM, JJ., concur.

DICKSON, J., dissents, believing that the penalty is insufficient.

---

1. Indiana Professional Conduct Rule 8.4(b) provides that it is professional misconduct for a lawyer to commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects.